UNITED STATES, Appellee

v.

Douglas L. SAFERITE, Senior Airman
U.S. Air Force, Appellant

No. 03-0271

Crim. App. No. 34378

United States Court of Appeals for the Armed Forces

Argued October 22, 2003

Decided March 3, 2004

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., EFFRON, BAKER, and ERDMANN, JJ., joined.

Counsel

For Appellant:  Captain Jennifer K. Martwick (argued); Colonel
Beverly B. Knott, and Major Terry L. McElyea (on brief).

For Appellee:  Major Shannon J. Kennedy (argued); Colonel
LeEllen Coacher (on brief); Lieutenant Colonel Robert V. Combs
and Lieutenant Colonel Lance B. Sigmon.

Military Judge:  Rodger A. Drew, Jr.


  **This opinion is subject to editorial correction before final publication**.

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of attempting to sell military property (three specifications), selling military property (eight specifications), and larceny of military property (12 specifications), in violation of Articles 80, 108, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 908, and 921 (2000), respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement for six years, a fine of $14,565.00 and to be further confined until the fine is paid but not for more than one year, and a reduction to the grade of E-1, airman basic. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. United States v. Saferite, ACM 34378 (A.F. Ct. Crim. App. January 10, 2003).

This Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED IN ADMITTING PROSECUTION EXHIBITS 141 AND 142 AS EVIDENCE IN SENTENCING TO SHOW THAT APPELLANT'S WIFE MAY HAVE BEEN AN ACCESSORY TO HIS ESCAPE FROM PRETRIAL CONFINEMENT.

For the reasons set out below, we find that the military judge erred in admitting these two exhibits, but conclude that this error was harmless and affirm.

## Factual Background

The facts underlying Appellant's conviction were summarized as follows by the Court of Criminal Appeals:

2

> In the summer of 1999, the appellant was assigned to the Network Control Center at Spangdahlem [Air Base, where appellant was] responsible for computer systems used for communications. He planned to separate from the Air Force in September 1999, and had a job awaiting him in Germany. He was also engaged to Isabelle Scholzen, a citizen of Luxembourg, who was expecting their child in December 1999.
>
> From about July to September 1999, the appellant stole large quantities of expensive computer equipment and electronic components from his duty section, and sold them over the Internet through a popular auction site. On the night before he was scheduled to out-process from the Air Force, he stole processors from the eight computers handling the installation's unclassified e-mail. He was careful to take only three of the four processors from each machine, so the system would continue to operate even though its capabilities were greatly reduced. Nonetheless, technicians soon discovered the missing processors, and the appellant was apprehended before his separation from active duty. A search of his rented car and his girlfriend's home revealed more stolen government property, and ultimately led investigators to records of his sales of government property over the Internet. The total loss to the United States exceeded $100,000.00
>
> The appellant was placed in pretrial confinement on 2 October 1999. Air Force authorities allowed him to marry Isabelle Scholzen while in confinement, and four days later she gave birth to their child.

Id. at 2.

During Appellant's trial, he escaped from pretrial confinement.[*] He was convicted and sentenced in absentia.

---

[*] Appellant was confined at the military facility in Mannheim, Germany, but he was taken under guard to Spangdahlem Air Base to consult with his counsel and participate in trial proceedings. He was being held overnight in a billeting facility at Spangdahlem Air Base when he escaped from his guards.

During the sentencing proceedings, defense counsel presented a written unsworn statement from Appellant's wife, Ms. Scholzen. In the statement, she gave her opinion of the Appellant as a caring father and supportive spouse. She described in detail her relationship with Appellant including how she met him, how he convinced her to keep their baby when she unexpectedly became pregnant, and how and why they got married even while Appellant was in pretrial confinement. She described Appellant's support for her during a challenging pregnancy and his happiness when their baby was born. Repeatedly she commented on Appellant's desire to be a good husband and father and her need for and dependence on Appellant. She professed her love for Appellant and described how much they missed each other. She ended her statement with a passionate plea for compassion for Appellant.

In rebuttal, trial counsel offered two items of documentary evidence in an attempt to attack the credibility of Ms. Scholzen. Trial counsel asserted that these two documents were evidence of bias by Ms. Scholzen because they "tend to establish that circumstantially" Ms. Scholzen "was materially involved in the escape of the accused from pretrial confinement on the 2d of March 2000." Prosecution Exhibit 141 was a redacted sworn statement showing that Appellant, while in pretrial confinement, had talked to Ms. Scholzen on the telephone on the evening of

4

February 29, 2000. Prosecution Exhibit 142 was another sworn statement showing that approximately 40 minutes after Appellant escaped from custody, Ms. Scholzen was stopped by military authorities in the middle of the night as she was driving out of Spangdahlem Air Base at a high rate of speed. Appellant was not in his wife's vehicle and his location was not established. Prosecution Exhibit 142 further revealed that Ms. Scholzen told the German police at the scene that she went to Spangdahlem to talk to her husband but was unable to locate him.

Trial defense counsel objected to both of these documents and argued they were not relevant and were unduly prejudicial. The military judge admitted Prosecution Exhibits 141 and 142 over defense objection, ruling that the evidence was relevant to show bias, in that it tended to show that Ms. Scholzen was willing "to engage in criminal activity in order to support her husband." The military judge weighed the danger of unfair prejudice against the probative value and concluded the evidence was not unfairly prejudicial "because it's not [Appellant] we're talking about here, it's his wife." The military judge ruled that the documents, with further redaction of extraneous material, were admissible extrinsic evidence under Military Rule of Evidence 608(c) [hereinafter M.R.E.].

In his sentencing instructions, the military judge cautioned the members that they must "bear in mind that the

5

accused is to be sentenced only for the offenses of which he has been found guilty." He further instructed the members that they were permitted to consider Appellant's absence from the court-martial "in assessing his military record," but he cautioned them,

> [R]emember that if he is to be punished for that absence, it will be in a different forum, on a future date. The function of this court is to punish the accused only for the offenses of which he has been found guilty by this court.

During arguments on the sentence, trial counsel attacked the testimony of Ms. Scholzen. First, he argued that "She's not entirely uninvolved with this entire situation." He asserted that she was aware of Appellant's making big money by auctioning items on the Internet. Second, he argued that the evidence suggested that "there was some coordination, some communication, some collusion there between the two of them about his escape from confinement." Trial counsel assured the members that the evidence was not presented to "beat up" Ms. Scholzen, but "as a form of bias." He concluded this portion of his argument by exhorting the members to consider Ms. Scholzen's willingness to help Appellant escape from confinement when they read her statement.

Addressing the present issue, the Court of Criminal Appeals held that the military judge did not abuse his discretion in admitting Prosecution Exhibits 141 and 142. The court stated

6

complete agreement with the reasoning of the military judge that these documents tend to show bias of Appellant's wife because of her willingness to engage in criminal activity to support Appellant. Saferite, ACM 34378 at 3-4.

Before this Court, Appellant asserts that Prosecution Exhibits 141 and 142 were not proper rebuttal evidence because they did not "explain, repel, counteract or disprove" anything in Ms. Scholzen's letter. He asserts that the evidence did not demonstrate any "bias, prejudice or any motive to misrepresent" on the part of Ms. Scholzen, because the allegation of involvement in her husband's escape from confinement does not make her feelings about her husband and her perception of his qualities less true. Appellant also argues that the evidence was unduly prejudicial because it allowed the prosecution to refer to uncharged misconduct in argument, i.e., that Appellant conspired with his wife to escape and was the type of person who would involve his wife in his criminal activities, without a proper cautionary instruction from the military judge regarding the limited purpose for which the evidence was received.

The Government argues that the military judge did not abuse his discretion by admitting the evidence. It argues that a declarant's bias is always relevant, that trial counsel limited his use of the evidence to focus on bias, and that the military judge cautioned the members that they could punish Appellant

only for the offenses of which he was found guilty. The Government argues that the evidence rebutted Ms. Scholzen's characterization of Appellant as a devoted "family man" by showing that he was "willing to involve his wife in a criminal enterprise" and "willing to 'orphan' his offspring by risking both of their parents' freedom." Finally, the Government argues that even though the members were already aware that Appellant was a deserter, they sentenced him to confinement for six years instead of 16 years as recommended by the trial counsel, indicating that they were not unduly inflamed by the evidence at issue.

Discussion

"The Military Rules of Evidence are applicable to sentencing . . . thus providing procedural safeguards to ensure the reliability of evidence admitted during sentencing." United States v. McDonald, 55 M.J. 173, 176 (C.A.A.F. 2001); Manual for Courts-Martial, United States (2002 ed.), Analysis of the Military Rules of Evidence A21-69. The military judge may exercise discretion to relax the evidentiary rules for the defense to present sentencing evidence. M.R.E. 1101(c); Rule for Courts-Martial 1001(c)(3). This relaxation of evidentiary rules "'goes more to the question of whether the evidence is authentic and reliable'" and "otherwise inadmissible evidence still is not admitted at sentencing." United States v. Boone,

49 M.J. 187, 198 n.14 (C.A.A.F. 1998)(quoting David A. Schlueter, Military Criminal Justice: Practice and Procedure § 16-4(B) at 721 (4th ed. 1996)).

During sentencing, as at every other moment of trial testimony, the credibility of a witness is an omnipresent issue. Each witness's credibility determines the authority of the testimony. Section VI of the Military Rules of Evidence is entitled "Witnesses," but easily could be viewed as "Credibility of Witnesses" as the whole section focuses on technical evidentiary rules to bolster or to attack the credibility of testimony.

M.R.E. 608 is a key evidentiary rule that covers several methods to bolster or attack the credibility of a witness. These methods include opinion and reputation evidence as to the character of a witness for truthfulness and questions regarding specific instances of conduct that may be relevant to credibility. Important to the present case is M.R.E. 608(c), which states: "Evidence of bias. Bias, prejudice, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced."

Evidence of bias can be powerful impeachment. Davis v. Alaska, 415 U.S. 308 (1974). The Supreme Court has observed that "[p]roof of bias is almost always relevant." United States v. Abel, 469 U.S. 45, 52 (1984). Although extrinsic evidence of

specific acts of misconduct may not be used to prove a witness's general character for truthfulness, it may be used to impeach a witness by showing bias. United States v. Hunter, 21 M.J. 240, 242 (C.M.A. 1986).

Additionally, we are mindful that evidentiary rules are not applied in a factual vacuum. The context in which evidence is offered is often determinative of its admissibility. In the present case, as the prosecution offered Prosecution Exhibits 141 and 142 to rebut Defense Exhibit C, the admissibility of rebuttal evidence is at issue. This Court has clearly stated the legal function of rebuttal evidence: "It is . . . to explain, repel, counteract or disprove the evidence introduced by the opposing party." United States v. Banks, 36 M.J. 150, 166 (C.M.A. 1992)(quoting United States v. Shaw, 9 C.M.A. 267, 271, 26 C.M.R. 47, 51 (1958)(Ferguson, J., dissenting)). "The scope of rebuttal is defined by evidence introduced by the other party." Id. at 166.

Rebuttal evidence, like all other evidence, may be excluded pursuant to M.R.E. 403 if its probative value is substantially outweighed by the danger of unfair prejudice. United States v. Hursey, 55 M.J. 34, 36 (C.A.A.F. 2001). M.R.E. 403 applies to sentencing evidence. United States v. Rust, 41 M.J. 472, 478 (C.A.A.F. 1995).

We review a military judge's evidentiary rulings for abuse of discretion.  United States v. Sullivan, 42 M.J. 360, 363 (C.A.A.F. 1995).  When the military judge conducts a proper balancing test, we will not overturn the ruling to admit the evidence unless there is a "clear abuse of discretion."  United States v. Ruppel, 49 M.J. 247, 250 (C.A.A.F. 1998).

We hold that the military judge clearly abused his discretion.  While the evidence was logically relevant to show Ms. Scholzen's bias in favor of Appellant, its probative value was substantially outweighed by the danger of unfair prejudice.

The probative value was minimal.  The thrust of Ms. Scholzen's statement was to present her personal opinion that Appellant was a good father and husband.  Her poignant plea professed her love for Appellant, emotional need for his support, and loneliness during his absence.  The content and tone of Ms. Scholzen's statement convincingly showed her bias as the wife of Appellant.  It was clear that her statement presented her view of Appellant through her eyes as his wife.  Her detailed explanation of her marriage to Appellant while he was in pretrial confinement spoke volumes about her commitment to him and clear bias for him.

In this context, evidence of her possible complicity in Appellant's escape added little to establish her bias in her

11

statement. At best, it was merely cumulative on the issue of her bias toward Appellant.

On the other hand, the danger of unfair prejudice was substantial. Rather than show bias on the part of Ms. Scholzen, the evidence tended merely to allege uncharged misconduct by Appellant. If the members believed the theory advanced by the prosecution, then Appellant was guilty of conspiring with his wife and involving her in the criminal conduct of his escape. First, we view the factual evidence of this theory as tenuous at best. The circumstances of the authorities stopping Ms. Scholzen off base early in the morning did not establish her involvement in Appellant's escape at his behest. Second, notwithstanding the factual deficiency to link Ms. Scholzen to Appellant's escape, trial counsel focused his argument on the uncharged misconduct. Trial counsel did ask the members to find "a form of bias" from the willingness of Ms. Scholzen to help Appellant escape. But the focus of his argument was on the uncharged misconduct of Appellant's conspiring with his wife to assist him in his escape as reflected in trial counsel's statement, "We suggest to you that there was some coordination, some communication, some collusion there between the two of them about his escape from confinement."

Although we identify this danger of unfair prejudice, we further hold that the error was harmless under the particular

12

facts of this case. Evidence of Appellant's escape was already before the members. Appellant was tried in absentia. The military judge carefully instructed the members to sentence Appellant only for the offenses of which he was convicted. He cautioned the members that any punishment arising from Appellant's absence "will be in a different forum, on a future date."

The record reflects that the members followed the military judge's instruction. The maximum period of confinement was 230 years and the trial counsel asked the members to impose confinement for 16 years. However, the members imposed confinement for only six years. Thus, we can "say, with fair assurance, . . . that the judgment was not substantially swayed by the error." Kotteakos v. United States, 328 U.S. 750, 765 (1946)(quoted in Hursey, 55 M.J. at 36 (C.A.A.F. 2001)). See also United States v. Baer, 53 M.J. 235, 238 (C.A.A.F. 2000).

## Decision

The decision of the United States Air Force Court of Criminal Appeals is affirmed.