CRAWFORD, Judge
(concurring in part and dissenting in part):
I concur in the majority’s conclusion that the evidence at trial was legally sufficient to prove beyond a reasonable doubt that the substance used and distributed by Appellant was illegal. On the question of evidentiary error, however, I cannot agree that the military judge abused his discretion by excluding certain phrases from documents offered by the defense in its sentencing case. Nor can I conclude, after considering all the sentencing evidence and weighing Appellant’s crimes against his sentence, that if there were any error that it was prejudicial.
FACTS
Two critical factual aspects of this case are ignored by the majority: the concession of Appellant’s trial defense counsel and the rote nature of both the excluded language and the letters from which that language was redacted.
The majority correctly quotes the military judge’s query regarding the applicability of Rule for Courts-Martial (R.C.M.) 1001(b)(5)(D) during a session pursuant to Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a), at which the admissibility of defense sentencing exhibits was discussed, but omits the defense counsel’s response, which I include below:
MJ: Defense Counsel, tell me why the language of the second and third sentences of paragraph 4 of Defense Exhibit D don’t fall squarely within the parameters of RCM 1001(b)(5)(D). I can quote it for you if you like.
DC: No sir, I am familiar. I would have to agree with the judge’s opinion on that one, sir.
The majority correctly notes the favorable effect that testimonials from peers and superiors can and should have on the trial court’s determination of an appropriate sentence. A cursory examination of Defense Exhibits B, C, D, E, F, and H, however, reveals their “form letter” nature, and as the majority notes, the redacted language is also notably similar.
R.C.M. 1001(b) AND 1001(c)
I agree with the majority that Rule for Courts-Martial 1001(b)(5)(D) applies only to evidence offered by the prosecution in its sentencing[1] case, and not to defense evidence. I do not share the majority’s reliance on dicta in United States v. Ohrt, 28 M.J. 301 (C.M.A.1989), and United States v. Ramos, 42 M.J. 392 (C.A.A.F.1995), to support the lower court’s confusion between: (1) a recommendation/opinion in favor of or opposed to a punitive discharge; (2) a recommendation/opinion for retention; (3) a recommendation/opinion that an accused be separated; and (4) the scope and effect of R.C.M. 1001(b) and 1001(c).
Nothing in either Ramos or Ohrt applies R.C.M. 1001(b) to evidence offered by the defense during its sentencing case, nor do those opinions even suggest such an application. What those opinions do suggest, in dicta, is that defense witnesses are not permitted to offer a recommendation pertaining to a punitive discharge. This “sauce for the goose”[2] tangent is posited without reference to any rule of evidence or procedure, but appears to be grounded on the proposition that “such an opinion invaded the province of the court-martial____”[3]
*412 If we accept Ohrt’s[4] dicta, arguendo, we could summarize the rules rather easily: (1) the only discharge a court-martial can impose is a punitive discharge, which may only be imposed as a punishment included in the sentence of a court-martial; (2) no witness at court-martial may recommend for or against a punitive discharge; (3) the opinion of a witness at court-martial to the effect that an accused should be discharged or separated is prohibited as tantamount to a recommendation for punitive discharge; and (4) the opinion of a witness at court-martial to the effect that an accused should be retained in the unit or in his service may or may not be a recommendation against punitive discharge.
It is this latter category of opinions that I now address. While R.C.M. 1001(b)(5)(D) expressly prohibits opinions by prosecution witnesses “regarding the appropriateness of a punitive discharge or whether the accused should be returned to the accused’s unit,” R.C.M. 1001(c) contains no such prohibition. This is entirely consistent with the drafters’ intention that prosecution evidence fit neatly into one or more of the “pigeon holes” created by R.C.M. 1001(b)(l)-(5), and that defense evidence need only meet the modest limitations of R.C.M. 1001(c).[5] Thus, while dicta in our case law prohibit a defense witness from recommending against punitive discharge, we have also long recognized the importance and admissibility of a recommendation that the accused be returned to duty or to his unit. Aurich, 31 M.J. at 96. This is not to say that the defense presentation is unfettered. The drafters wisely included R.C.M. 1001(d) as a check on the expansive boundaries for defense evidence. If the defense uses its broader rule to raise matters that the Government was prohibited from raising by its narrower rule, the Government may, within the discretion of the military judge, present evidence to rebut those matters.
My point is that R.C.M. 1001(b) and 1001(c) are not congruent, but they are not necessarily in conflict. As in the case of any other evidence, recommendations for retention made by defense witnesses, when challenged at trial, must be evaluated in context by the military judge, who must then determine their admissibility, subject to review on appeal for abuse of discretion.
DEFENSE CONCESSION AND ABUSE OF DISCRETION
Were this a de novo review, I would apply the plain language of R.C.M. 1001(b)(5) and 1001(c) in the context of this Court’s applicable holdings and determine whether the military judge erred in excluding portions of the defense exhibits. This is not a de novo review, however, and we are examining the military judge’s ruling for an abuse of discretion. Like the court below,[6] I am not prepared to abjure the significance of defense counsel’s concession to the military judge that either: (1) the defense was offering these exhibits for admission into evidence under R.C.M. 1001(b)(5); or (2) the language of R.C.M. 1001(b)(5)(D) could properly be applied to exclude defense evidence. If the defense, as the proponent of the evidence, conceded that the offered evidence was subject to a particular rule of evidence or procedure, that concession should weigh heavily when Appellant later complains that the military judge, in accepting that concession, abused his discretion.
Similarly, although the majority correctly notes that the military judge based his ruling on R.C.M. 1001(b)(5)(D), Griggs, 61 M.J. 402, 406, the majority also appears to assume both that the defense was offering the letters under R.C.M. 1001(c)(1)(B) and that the rules of evidence had been relaxed as provided in R.C.M. 1001(e)(3) to permit admission of *413 these unauthenticated and potentially unreliable letters.[7]
While I do not share the majority’s assumptions, I find it unnecessary to descend into the maelstrom, as I am willing, for purposes of further analysis, to assume without deciding that the military judge abused his discretion by excluding unredacted versions of Defense Exhibits B, C, D, E, F, and H.
PREJUDICE
Rather than relying on United States v. Boyd, 55 M.J. 217 (C.A.A.F.2001), which examined sentencing instructions for prejudice and addressed no evidentiary issues, I would apply this Court’s logic from United States v. Saferite, 59 M.J. 270, 274-75 (C.A.A.F.2004), in which we measured the effect of an evidentiary error in the sentencing ease by assessing: (1) the probative value and weight of the evidence (including the “content and tone” of testimonial evidence); (2) the importance of the evidence in light of other sentencing considerations, including the military judge’s instructions; (3) the danger of unfair prejudice resulting from the evidentiary ruling; and (4) the sentence actually imposed, compared to the maximum and to the sentence the trial counsel argued for. In the context of these considerations, we then determined whether the sentence had been “substantially swayed by the error.”[8]
That said, I must take issue with the majority’s exclusion of two key points in reaching their determination of prejudice: the form of the letters and the crimes themselves.
We simply cannot reach a determination as to prejudice without considering the effect that the form of the letters and the redacted language may have had on the weight given the letters by a panel the military judge described as “a group of five really intelligent members.”[9] Laid side by side, as they may well have been in the deliberation room, the letters in question are far too similar for the “five really intelligent members” to have failed to recognize them as largely the product of someone other than the signatories. Notwithstanding what may have been heartfelt words, the letters are obviously so similar that their weight would doubtless have been diminished by their glaringly mass-produced character. Failing to consider this deficiency, the majority assumes that the addition of further, obviously similar language would have had a favorable effect.
Appellant was convicted of using marijuana, two specifications of using ecstasy, and two specifications of distributing ecstasy. He faced a dishonorable discharge and a maximum period of confinement of forty-two years. The trial counsel argued for twelve months of confinement. Appellant received a bad-conduct discharge and confinement for 150 days.
Finding this to be a “close case,” the majority concludes that the absence of the redacted words from Defense Exhibits B, C, D, E, F, and H “substantially influenced” the sentence. Griggs, 61 M.J. at 410-11.
I find this not to be a close case. Convicted of five drug offenses, Appellant received little more than one percent of the maximum permissible confinement and about forty percent of what the trial counsel argued for. He did not receive a dishonorable discharge. It is beyond the common experience of mankind to expect that the “five really intelligent members” would have been “substantially influenced” by the addition of the excluded language to adjudge an even more lenient sentence.
*414 Finally, I view as unnecessary and ill-advised the majority’s elevation of Ohrt’s dicta that opinions regarding particular punishments should be disallowed because “[t]he question of appropriateness of punishment is one which must be decided by the court-martial; it cannot be usurped by a witness.” 28 M.J. at 305. I am not at all prepared to say that a military judge may properly exclude, for example: (1) the testimony of an accused’s mother that her son or daughter, facing life without parole, should not be “put away” irrevocably; or (2) the testimony of a young mother that the court should not take away the sole means of support for her and her children. Until we are squarely faced with those questions, and others like them, we would be wise to confine our holding to the issues at hand and leave the dicta of Ohrt right where it is.

. Although occasionally and colloquially referred to as the "aggravation” case, I decline to use that term, because only R.C.M. 1001(b)(4) addresses aggravation evidence. R.C.M. 1001(b)(l)-(3) address evidence that shall or may be presented by the trial counsel and R.C.M. 1001(b)(5) covers evidence of rehabilitative potential, which may be mitigating, but is never aggravating. United States v. Aurich, 31 M.J. 95, 97 (C.M.A.1990)(per curiam).

. "What’s sauce for the goose is sauce for the gander.” The New Dictionary of Cultural Literacy 57 (3d ed.2002).

. United States v. Cherry, 31 M.J. 1, 5 (C.M.A. 1990)(citing Ohrt, 28 M.J. at 305).

. 28 M.J. at 304-05.

. "Historically the sentencing phase of the court-martial has been the defense counsel’s show. The 1969 Manual for Courts-Martial intentionally limited the trial counsel’s role to the presentation of narrowly specified matters in aggravation while the defense counsel had virtually unfettered opportunity to present matters in extenuation and mitigation.” Major Larry Gaydos, A Prosecutorial Guide to Court-Martial Sentencing, 114 Mil. L.Rev. 1 (1986) (footnotes omitted).

. United States v. Griggs, 59 M.J. 712, 715 (A.F.Ct.Crim.App.2004).

. A sub silentio relaxation carries with it the unarticulated danger that the rules could be relaxed to the same extent during prosecution rebuttal. R.C.M. 1001(d). Particularly in light of the nature of evidence here considered and the potential for rebuttal, military judges and counsel would be wise to ensure that the record reflects whether the rules of evidence have been relaxed.

. Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

. Responding to the Government argument that this evidence might confuse the members, the military judge said, "You are not going to confuse these court members. This is a group of five really intelligent members. They are not at all confused.”