# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

No. 201600180

———————————

## UNITED STATES OF AMERICA
Appellee

v.

## WALTER J. WAGERS III
Private First Class (E-2), U.S. Marine Corps
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel David M. Jones, USMC.
Convening Authority: Commanding Officer, Marine Corps Air Station, Beaufort, SC.
Staff Judge Advocate's Recommendation: Major Brett R. Swaim, USMC.
For Appellant: Lieutenant Jacqueline Leonard, JAGC, USN.
For Appellee: Major Cory A. Carver, USMC; Lieutenant Robert J. Miller, JAGC, USN.

———————————

Decided 23 February 2017

———————————

Before CAMPBELL, RUGH, and HUTCHISON, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————

RUGH, Judge:

A military judge sitting as a general court-martial convicted the appellant, consistent with his pleas, of violating a general order, dereliction of duty, wrongful use of marijuana and Oxycodone, sexual assault of a child, sexual abuse of a child, receiving child pornography, negligent child endangerment, and obstructing justice, —violations of Articles 92, 112a, 120b

and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a, 920b, and 934 (2012). The military judge sentenced the appellant to 10 years' confinement, reduction to pay grade E-1, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged.[1]

The appellant now raises two assignments of error (AOE): (1) that the military judge abused his discretion when he admitted Prosecution Exhibits (PE) 51, 53, and 54 as evidence in sentencing; and (2) that the appellant's sentence was inappropriately severe.[2] We disagree, and, finding no error materially prejudicial to the appellant's substantial rights, we affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

In December 2014, the appellant communicated online and over the telephone with a 15-year-old girl. Initially, the appellant believed—based on the girl's representation—that she was 17-years-old. However, when the girl's mother discovered a series of missed phone calls and sexually explicit text messages from the appellant to her daughter, she contacted the appellant online, informing him, "[t]his is [the girl's] mother. She is a 15yearold minor. I am sure you were not aware of that. Please desist from any further contact with her. Thank you!"[3] The girl's older sister followed with a similar message instructing the appellant to "back off."[4]

Despite these warnings, the appellant continued to engage in sexually explicit conversations with the girl, including crude discussions of various sexual acts, and sent pictures and videos of his genitalia to her. He also requested and received approximately 15 pictures of the girl engaged in sexually explicit conduct.

On 19 February 2015, the appellant arranged to pick the girl up from her home and transport her back to his on-base, barracks room some 80 miles away. He did so without her parents' knowledge, convincing her to lie to her parents about where she would stay the weekend. Two days later, the appellant's roommate drove the appellant to the girl's home, picked the girl up, and returned to base. During the drive back, the appellant and the girl

---

[1] While the appellant pleaded guilty pursuant to a pretrial agreement, the agreement had no effect on the sentence adjudged.

[2] AOE (2) was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] Stipulation of Fact, PE 1 at 2.

[4] *Id.*

sat in the back seat where the appellant digitally penetrated her genitalia and she masturbated him.

Once alone in his barracks room, the appellant and the girl consumed several cans of beer and shots of liquor provided by the appellant. They also took prescription medications provided by the girl. Through the rest of the weekend, they engaged in numerous sexual acts, including digital, oral, vaginal, and anal penetration. During the course of their sexual congress, the appellant's behavior became increasingly physical and degrading. By the end of the weekend, the girl was left with bruises, bite marks, and abrasions all over her body.

The next day, Sunday, 22 February 2015, the appellant convinced another friend to drive him and the girl back to her home town. During the ride back, the appellant again digitally penetrated the girl's genitalia and she masturbated him. They were met on the other end by the girl's panicked father, who had only just learned from the girl's mother and older sister that she was missing. The appellant was arrested, and when questioned by investigators, asserted that the girl had drugged him without his knowledge. He also denied he knew the girl was 15yearsold, and denied he provided her with alcohol.

After she returned home, the girl became increasingly depressed and withdrawn. She was distraught with guilt, and she obsessed over the assault. She withdrew from school and stopped participating in her regular activities. In April 2015, she took her parents' car and drove to the closest city where she intended to throw herself off a building. She left behind a journal entry that included "very childlike pictures of her laying on the ground . . . with all these words above her head . . . escaping out of her head . . . . ."[5] The escaping words included the appellant's name. However, on reaching the top of the building and staring over the side, she decided against jumping. She returned home with the help of a security guard.

During the same time period, the appellant was engaged in a long-term, long distance relationship with a 17-year-old girl. He regularly communicated with the girl over the telephone and online via live video applications. During these encounters, occurring on almost a daily basis, the appellant requested and received images and videos of the girl engaging in sexually explicit conduct. During the live video encounters, the appellant would often instruct the girl to perform specific sexual acts. He did so with other Marines present in the room, on occasion encouraging them to watch without the 17-year-old girl's knowledge.

---

[5] Record at 219.

## II. DISCUSSION

### A. Admission of PE 51, PE 53, and PE 54 in presentencing

During the pre-sentencing phase of trial, the military judge admitted PE 51 over defense objection and PE 53 and PE 54 without objection. PE 51 was a copy of local county jail call logs showing ongoing communications between the appellant and the 17-year-old girl after he was incarcerated for his offenses, including receipt of child pornography involving the girl. PE 53 and PE 54 were letters between the appellant and the 17-year-old girl, intercepted at the jail, which contained both sexually explicit descriptions and other, more mundane personal banter.

When the government offered PE 51, defense counsel objected to the relevance of the call logs in sentencing. The military judge asked, "So you don't understand that if he's pleading guilty to texting back-and-forth that if she's still a minor he's having communication after he's in the brig for these charges. You think that that's not relevant?"[6]

Defense counsel responded, "I see how it is related to the narrative of his interaction with these individuals. Calling her is not misconduct."[7]

The military judge then overruled the objection, elaborating:

> It does have relevance. It's not forbidden by [MILITARY RULE OF EVIDENCE (MIL. R. EVID.)] 403[, SUPPLEMENT TO THE MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). If I forgot to say so for any of these exhibits, I'm completely aware of [MIL. R. EVID.] 403 and that it applies on sentencing, and I will seek to try to put that on the record every chance I get. But I certainly understand [MIL. R. EVID.] 403 applies to sentencing. So [PE 51] is admitted into evidence.[8]

The government sought admission of PE 53 and PE 54 through the testimony of a Naval Criminal Investigative Service special agent. Defense counsel did not object, and the military judge admitted the exhibits. Subsequently, the special agent testified regarding the content of audio recordings of jail house calls between the appellant and the 17-year-old girl. The agent described the calls as a mixture of statements of affection and sexually explicit content. Defense objected to this line of questioning, articulating that:

---

[6] *Id.* at 194.

[7] *Id.*

[8] *Id.* at 195.

The misconduct that he's been charged with and found guilty of at this point is the child pornography charges regarding the images. Delving into other conduct that is not wrongful under the law with regards to communication, verbal, written, text, that sort of thing, we think would be improper aggravation with regard to the charge that he's been found guilty of.[9]

The military judge followed up with the trial counsel.

MJ [Military Judge]: So the point now that you want me to understand is that he has continued to be in contact with [the 17-year-old girl] when he's confined and still engage[d] in some sort of sexually charged conversation with her in spite of the charges; is that correct?

ATC [Assistant Trial Counsel]: Yes, sir. Exactly.

MJ: I can take that much and then still sustain the objection at this point, if we're going to get into the particulars of all these items, because I don't need to know all the particulars. Because under [MIL. R. EVID.] 403 that could prejudice me to get more angry at the accused than I should. I think the probative value is substantially outweighed by the danger of unfair prejudice. The fact of whether he's still communicating with minors while he's confined pending trials of doing these kinds of misconduct with minors is sufficient in that fact that she's told me that there was sexual banter back and forth is fine.[10] I don't need to hear all the specifics for me to get that sentencing principle to assist the government in aggravating the case. So the objection is sustained if we're going further on down this road. But I am going to consider that while he was confined, there were these phone calls. They were of a sexual nature between [the appellant] and [the 17-year-old girl]. Because that's directly relating to the charge, and it goes to possibly an absence of rehabilitative potential or lack of contrition or whatever else. So the fact that they're made, I do

---

[9] *Id.* at 248.

[10] The appellant also objects to the military judge's use of the word "minor" in this context, arguing that the 17-year-old girl was not a minor for purposes of Article 120b, UCMJ. However, she was a "minor" under the relevant offense of receipt of child pornography, Article 134, UCMJ. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 68b.c(4). As a result, the military judge's use of the term here was reasonable.

believe is directly relating to or resulting from. It's a continuation of the same victim, the same type of crime, etc. . . .[11]

Prior to the military judge's deliberations on sentence, trial counsel sought to clarify the applicability of this ruling on the special agent's testimony to the military judge's consideration of PE 53 and PE 54, already admitted without objection.

> TC: [T]he government does want the military judge to consider the general content of [PE 53 and PE 54] to the extent that they contained statements of, "I love you," and affection going back and forth as well as sexually explicit material without getting into the specifics of what that sexually explicit material was.

> MJ: Right. So I can consider what the agent said on that regard, but I can open the letter, look how long the letter is, put the letter back in the envelope, I don't need to read all of the particulars of their lives, which I really don't care about.

> TC: Absolutely, yes, sir. As long as, again, the judge is going to consider the fact that they do contain sexually explicit material because the government does feel that is an aggravating circumstance here.

> MJ: Right. And I allowed that with the agent's testimony.[12]

The military judge then accepted the jailhouse letters, phone logs, and relevant portions of the special agent's testimony to show the appellant's continuing, sexually explicit communications with one of the victims of the receipt of child pornography charge. The defense did not object to this decision as it applied to PE 53 and PE 54 and did not otherwise seek to admit the complete contents of either exhibit.

The appellant now asserts that admitting PE 53 and PE 54 was error in that the probative value of the jailhouse letters was substantially outweighed by the risk of unfair prejudice resulting from the sexually explicit content of the letters. Conversely, the appellant asserts that the admission of PE 51, PE 53, and PE 54—accompanied by the testimony of the special agent—solely for the purpose of showing that explicit communications took place, was error in

---

[11] Record at 248-49.

[12] *Id.* at 300.

that the military judge should have considered the content of the calls and letters to establish greater context for the communications between the appellant and the 17-year-old girl. In other words, the military judge should have admitted the letters and phone calls in their entirety or not at all.

The admission of sentencing evidence is subject to the MIL. R. EVID. 403 balancing test and the substantive law and procedures set forth in RULE FOR COURTS-MARTIAL 1001, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (citing *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995)).

When the appellant objects at trial, this court reviews a military judge's decision to admit evidence, including sentencing evidence, for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). "'The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

When the appellant does not object at trial, we review the military judge's decision to admit sentencing evidence for plain error. *United States v. Ramirez*, No. 200800055, 2009 CCA LEXIS 453, at *7, unpublished op. (N-M. Ct. Crim. App. 17 Dec. 2009) (citing *United States v. Powell*, 49 M.J. 460, 463-65 (C.A.A.F. 1998)). When the appellant's court-martial was by military judge alone, he faces a "particularly high hurdle" when analyzing for plain error. *Id.* at *8. Military judges are presumed to know and apply the law correctly; to filter out inadmissible evidence; and to not rely on inadmissible evidence. *Id.* (citing *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000))[13]

Under either error standard, relief is only appropriate if the erroneous admission of evidence resulted in prejudice to the appellant.[14] Even assuming *arguendo* that the limited admission of the jailhouse letters and phone call

---

[13] In *Ramirez*, this court found that evidence of the appellant's pre-service marijuana use was insufficiently related in time, type, or outcome to the convicted crime to qualify as proper evidence in aggravation. Regardless, utilizing the standard applied to military judge-alone proceedings, we found that admission of this evidence did not rise to the level of plain error. 2009 CCA LEXIS 453, at *8 (citing *United States v. Hardison*, 64 M.J. 279, 281-82 (C.A.A.F. 2007)).

[14] This test for prejudicial error in sentencing is unique from that conceived in MIL. R. EVID. 403, which "speaks to the capacity of some concededly relevant evidence to lure the factfinder" into a decision on an improper basis. *United States v. Collier*, 67 M.J. 347, 354 (C.A.A.F. 2009) (citation and internal quotation marks omitted).

testimony was substantially more prejudicial than probative, we find it harmless.

The erroneous admission of evidence during sentencing is tested "to determine if the error substantially influenced the adjudged sentence." *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F. 2005). If it did, then the result is materially prejudicial to the appellant's substantial rights. Art. 59(a), UCMJ. While we typically test for prejudice using the factors set out in *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999), the analysis set out in *United States v. Saferite* is more useful for sentencing errors. 59 M.J. 270, 274-75 (C.A.A.F. 2004). Under the *Saferite* analysis, we consider: 1) the probative value and weight of the evidence; 2) the importance of the evidence in light of other sentencing considerations; 3) the danger of unfair prejudice resulting from the evidentiary ruling; and 4) the sentence actually imposed, compared to the maximum and to the sentence the trial counsel argued for. *Griggs,* 61 M.J. at 413 (Crawford, J., concurring in part and dissenting in part) (citing *Saferite*, 59 M.J. at 274-75).

Here, the government's case in sentencing was prodigious. It comprised 68 exhibits and the statements or testimony of the 15-year-old victim, her parents, and her stepfather. PE 50 (electronic copies of the pornographic images), PE 51, PE 53, and PE 54 were the only government exhibits pertaining to the child pornography charges involving the 17-year-old girl, and these exhibits were partially rebutted by Defense Exhibit (DE) A, a Naval Criminal Investigative Service results of interview report which expressed the 17-year-old girl's disinclination to cooperate in the investigation and belief that the appellant "did nothing wrong to her."[15] Additionally, the government's case included evidence of numerous disciplinary infractions and poor history of prior service, as well as the results of the appellant's positive urinalysis.

The providence inquiry and PE 1, the stipulation of fact, reviewed in great detail the sexual abuse the appellant committed against the 15-year-old-girl, including descriptions of oral, vaginal, and anal penetration. In a statement to investigators, admitted as PE 18, she detailed a moment in which the appellant placed a pillow over her head during sex with sufficient force that she had difficulty breathing. Subsequently, he threatened to tie her up if she refused to engage in anal intercourse with him. By contrast, the lurid but fantasy-based communications between the appellant and the 17-year-old girl pale in comparison to the actual abuse rendered by the appellant on his 15-year-old victim. Finally, despite a possible sentence to confinement of 129 and

---

[15] Defense Exhibit A at 1.

one-half years, the military judge imposed only confinement for 10 years.[16] As a result, we are confident the admission of this evidence did not alter the appellant's sentence or result in any other material prejudice to the appellant.

## B. Sentence appropriateness

The appellant also asserts that his sentence is inappropriately severe, in part, because of pre- and post-trial confinement conditions that violated Navy instructions. Particularly, the appellant contends that he did not receive regular monthly visits from a command representative prior to his court-martial; that he lost certain confinement privileges without a timely hearing post-trial; and that these privileges were withheld by a person without authority to do so.[17] The appellant has not alleged an Eighth Amendment or Article 55, UCMJ violation, and we do not find one has occurred. Likewise, the appellant does not indicate whether he has availed himself of administrative remedies prior to seeking relief from this court.

We review the record for sentence appropriateness *de novo*. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). "This requires individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender." *United States v. McDonald*, No. 201400357, 2016 CCA LEXIS 310, at *4, unpublished op. (N-M. Ct. Crim. App. 2016) (citations and internal quotation marks omitted). "While [a Court of Criminal Appeals] clearly has the authority to disapprove part or all of the sentence and findings," we may not engage in acts of clemency. *United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010).

Our authority to grant sentence appropriateness relief for conditions of post-trial confinement is not unlimited, but may be exercised in cases "based on a legal deficiency in the post-trial process[.]" *United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016). Regardless, "[a] prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007) (citation omitted). This requirement "promot[es] resolution of

---

[16] Of course, as the dishonorable discharge was mandatory, the decision to award it was outside the discretion of the military judge and was not substantially swayed by the admission of any erroneous evidence.

[17] Appellant's Motion to Attach Appellant's Declarations, filed 8 Nov 2016.

grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review].” *Id.* at 471 (alterations in the original) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). The appellant has failed to carry that burden here.

Under the circumstances of this case, we are convinced that justice was done, and that the appellant received the punishment he deserved. *Healy*, 26 M.J. at 395. Granting relief at this point would be to engage in clemency, a prerogative reserved for the convening authority, and we decline to do so.

### III. CONCLUSION

The findings and sentence, as approved by the CA, are affirmed.

Senior Judge CAMPBELL and Judge HUTCHISON concur.

For the Court



R.H. TROIDL
Clerk of Court