# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––

**No. ACM 39085**

––––––––––––––––

**UNITED STATES**
*Appellee*

**v.**

**Darion A. HAMILTON**
Senior Airman (E-4), U.S. Air Force, *Appellant*

––––––––––––––––

Appeal from the United States Air Force Trial Judiciary

Decided 20 December 2017

––––––––––––––––

*Military Judge:* James R. Dorman.

*Approved sentence:* Bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 25 April 2016 by GCM convened at F.E. Warren Air Force Base, Wyoming.

*For Appellant:* Major Lauren A. Shure, USAF.

*For Appellee:* Lieutenant Colonel G. Matt Osborn, USAF; Major Jeremy D. Gehman, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

*Before* THE COURT EN BANC.

Chief Judge MAYBERRY delivered the opinion of the Court, in which Senior Judge JOHNSON, Judge BENNETT, Judge SPERANZA, and Judge DENNIS joined. Senior Judge HARDING filed a separate opinion concurring and dissenting in part, in which former Chief Judge DREW and Judge MINK joined. Judge HUYGEN filed a separate opinion concurring in the result in part and dissenting in part.[1]

––––––––––––––––

[1] Former Chief Judge Drew participated in this decision prior to his retirement.

---

**PUBLISHED OPINION OF THE COURT**

---

MAYBERRY, Chief Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty, in accordance with his pleas pursuant to a pretrial agreement, of one specification each of wrongfully possessing child pornography on divers occasions and wrongfully distributing child pornography on divers occasions, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. The court sentenced Appellant to a bad-conduct discharge, total forfeiture of pay and allowances, confinement for two years, and reduction to E-1. The convening authority approved the adjudged sentence.

Appellant asserts two assignments of error: (1) the military judge erred by admitting victim impact statements from individuals depicted in the child pornography possessed by Appellant as evidence in aggravation, and (2) the sentence is inappropriately severe. In addition, although not raised by Appellant, we note the appellate review of his case was subjected to a facially unreasonable delay. We find no prejudicial error and affirm.

## I. BACKGROUND

Imgur.com (Imgur) is an online image hosting service used by millions of users daily. Images uploaded to Imgur can be accessed by Imgur personnel, and can also be accessed by other users by searching on Imgur or through other search engines. Uploaded files are not password protected or private in any other way. In July and October 2014, the Imgur Abuse Department received reports of uploaded files that appeared to contain images of child pornography. The files, which were confirmed to contain child pornography, were uploaded from an Internet protocol address belonging to Appellant.

On 20 August 2014, the Air Force Office of Special Investigations and the Wyoming Division of Criminal Investigation, Computer Crime Team, Internet Crimes Against Children Task Force (ICAC), obtained search authorization from the military magistrate and searched Appellant's dormitory room. A desktop computer and external hard drive were seized, as well as other electronic devices. All of the files that had been previously uploaded to Imgur were found on either the desktop or external hard drive, as were additional videos and images of child pornography.

An ICAC forensic analysis of the illicit files established that individual link files (only created when a file has been individually accessed) were present on Appellant's laptop. The forensic analysis also determined that Appel-

lant uploaded 116 images on 14 July 2014, 61 images on 10 July 2014, and 42 images on 7 August 2014. Some of these 219 images were duplicates, but ultimately Appellant possessed over 150 distinct images depicting children who appear to be between the ages of 2 and 14 years-old engaging in sexually explicit activity. The National Center for Missing and Exploited Children determined that 50 of the files contained visual depictions of known child victims identified by law enforcement in past investigations, including images in the "Blue Pillow" and "Marineland" series.

At trial, Detective (Det) KP of the Elk Grove, California, Police Department identified three images offered in this case as belonging to the "Blue Pillow" series. Det KP was involved in the 2009 investigation that identified the individual depicted in those images, B, as well as the person who produced and distributed the original images. Det KP testified that B was 7 to 12 years-old when the images were created, and was 18 years old at the time of Appellant's trial. Det KP identified unsworn victim impact statements written by B and her mother in 2011 and a video of a keynote address given by B at a 2015 Crimes against Children Conference held in Dallas, Texas. Det KP stated that B requested both the written impact statements and the video be considered in any case involving her images.[2] Additionally, the Government offered an affidavit from the Okanogan, Washington, Sheriff's Office with an unsworn victim impact statement from J, a victim in the "Marineland" series. Appellant's trial defense counsel objected to all four exhibits on the basis that they were not proper matters in aggravation or victim impact statements because they were created prior to the charged timeframe and contained sentence recommendations. The military judge overruled the objections, allowing all four unsworn victim impact statements, specifically indicating that he was well aware of what is proper and improper within an unsworn statement both from the accused and a victim, and would give such statements the weight they deserve under the rules.

---

[2] The prosecution called Det KP with the intent of him testifying about B's victim impact. In response to a defense hearsay objection, trial counsel argued that the detective's testimony was proper aggravation evidence under Rule for Courts-Martial (R.C.M.) 1001(b)(4) and R.C.M. 1001A and because the new law allowed victim impact to be presented through a third party. Sustaining the objection, the military judge stated that the law allowed a victim to make a statement themselves or have someone else make the statement on their behalf, not have a third party testify about their personal observation of victim impact under R.C.M. 1001A.

## II. DISCUSSION

### A. Sentencing Matters

#### 1. Evidence

We review a military judge's admission or exclusion of evidence, including sentencing evidence, for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). "[T]hat discretion is abused when evidence is admitted based upon an erroneous view of the law." *United States v. Holt*, 58 M.J. 227, 230–31 (C.A.A.F. 2003). "The Military Rules of Evidence are applicable to sentencing . . . thus providing procedural safeguards to ensure the reliability of evidence admitted during sentencing." Military Rule of Evidence (Mil. R. Evid.) 1101; *United States v. Saferite*, 59 M.J. 270, 273 (C.A.A.F. 2004) (quoting *United States v. McDonald*, 55 M.J. 173, 176 (C.A.A.F. 2001)).

The admission of evidence in aggravation during sentencing is controlled by Rule for Courts-Martial (R.C.M.) 1001(b)(4), which allows trial counsel to present evidence of "any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." Such evidence "includes, but is not limited to, evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused. . . ." *Id.* "The phrase 'directly relating to or resulting from the offenses' imposes a 'higher standard' than 'mere relevance.'" *See United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995) (quoting *United States v. Gordon*, 31 M.J. 30, 36 (C.M.A. 1990)).

In 2013, Congress enacted Article 6b, UCMJ, pursuant to the National Defense Authorization Act (NDAA) for Fiscal Year 2014. Pub. L. No. 113-66, § 1701, 127 Stat. 672 (2013) (codified as 10 U.S.C. § 806b). Article 6b, UCMJ, incorporated additional rights of crime victims in presentencing provided in the Crime Victims' Rights Act (CVRA), 18 U.S.C. 3771, with an effective date of 26 December 2013. Article 6b nearly mirrors the rights afforded to victims in civilian criminal trials under the CVRA and establishes that a victim has "[t]he right to be reasonably heard . . . at [a] sentencing hearing related to the offense." 10 U.S.C. § 806b(a)(4)(B). The article provides no further guidance on the manner in which a victim could exercise that right and does not address the victim's right to be heard at presentencing in terms of presenting victim impact. R.C.M 1001A is the President's implementation of and guidance for the application of Article 6b.

R.C.M. 1001A(b) defines crime victim, victim impact, mitigation, and the right to be reasonably heard. R.C.M. 1001A(b)(4)(B) states that in non-capital cases the right to be reasonably heard includes the right to make a sworn statement (defined by R.C.M. 1001A(d))[3] or unsworn statement (defined by R.C.M. 1001A(e)). The content of statements is defined in R.C.M. 1001A(c). Prior to the enactment of Article 6b, in order to be heard in presentencing proceedings, a victim had to be called by a party to testify as a witness. R.C.M. 1001A(a) currently provides the mechanism by which a crime victim exercises his or her "independent" right to be reasonably heard at a presentencing hearing. If a crime victim exercises the right to be reasonably heard, he or she is called by the court-martial (not the prosecution), and the crime victim is not considered a witness for the purposes of Article 42(b) UCMJ, 10 U.S.C. § 842(b). R.C.M. 1001A does not contain the word evidence at all.

When R.C.M. 1001A was implemented, R.C.M. 1001 was also modified. R.C.M. 1001(a) states the ordinary sequence of presenting presentencing *matters*. The revised R.C.M. 1001(a) language explicitly distinguishes between evidence and other matters. Reading the plain language of the rules, we hold that unsworn victim impact statements offered pursuant to R.C.M. 1001A are not evidence. *See also United States v. Provost*, 32 M.J. 98, 99 (C.M.A. 1991) (if an accused elects to make an unsworn statement, he is not offering evidence). Both R.C.M. 1001(c)(2)(C) and R.C.M. 1001A(e) allow facts in an unsworn statement to be contradicted or rebutted. This does not change the character of the right to speak.

This does not end our analysis, as we must now consider whether the military judge properly admitted the victim impact statements offered in this case.

**2. Victim Impact Statements**

*a. Additional Background*

At trial, Appellant's counsel objected to the admission of the victim impact statements on the bases that they predated Appellant's offenses, were not a direct result of Appellant's offenses, and in some respects contained a sentence recommendation.[4] Specifically, Appellant asserted that the unsworn

---

[3] This opinion does not address the application of the Mil. R. Evid. to sworn victim impact statements. See R.C.M. 1001A(d).

[4] At trial, Appellant did not object to the lack of foundation or authenticity of any of the victim impact exhibits. Now, appellate defense counsel "notes" these "deficiencies" while acknowledging the absence of any objection at trial. Failure to object forfeits appellate review absent plain error. *United States v. Eslinger*, 70 M.J. 193

*(Footnote continues on next page)*

statements of B, B's mother, and J did not meet the requirements of R.C.M. 1001A because despite the general proposition that children portrayed in pornography are the direct victims of such offenses for sentencing purposes, the statement did not relate to "the specific harm caused by [Appellant]" as required to be admissible in presentencing. *See Rust*, 41 M.J. at 478. Appellant argued:

> All of these statements were written or given *before* the charged timeframe, so they cannot possibly be describing the impact felt for *these* crimes. They each manifest a lack of awareness of this case and fail to articulate how any of the harm is attributable to this accused. That these children were severely traumatized by sexual abuse years ago, cannot be directly attributed to [Appellant's] actions years later.

With regard to the statements from B and her mother, the trial judge overruled the objections, stating:

> I think the case law in this area is fairly well developed and clear that even though it is not direct [impact] in the sense that we normally associate with direct, the courts have recognized that for [sic] the victims of child pornography are considered, for the sake of law, as direct victims of the subsequent viewing of that by other individuals.
>
> . . .
>
> With regards [to what appears to be a sentence recommendation] . . . in light of the fact that under the new victim's rights provisions, the victim does have fairly broad discretion with regards to the matters that are submitted to the court for consideration. I am going to overrule the objection but will note that the court is well aware of what is proper and improper under an unsworn statement both from the accused and from the alleged victim, and the court will give that evidence the weight it deserves under the rules.

---

(C.A.A.F. 2011). There was no error, plain or otherwise. Detective (Det) KP's testimony identified that the proffered unsworn statements were prepared by B and her mother, respectively, in 2011 and B's video was made in 2015. Det KP explicitly stated that B requested that both the impact statements and the video be considered in any case involving her images. The affidavit accompanying J's statement attested to the fact that J wrote the statement and wanted it to be considered.

With regard to the video statement prepared by B, the trial judge overruled the objection that it was not a proper unsworn statement under R.C.M. 1001A stating:

> [E]vidence of victim impact is fairly broad in terms of what falls under evidence of victim impact . . . as with the previous statement, I will give it the due weight that I believe it deserves under the law.

With regard to J's written victim impact statement, the military judge overruled the objection that it was not proper victim impact, stating:

> I do find, with regards to the broad, overarching objection with regards to the victim impact statements in general . . . that these do fall within what is permitted under 1001 . . . even despite the fact that it predates the accused's alleged acts as the case law is fairly clear that is not a limitation. The mere act of the accused viewing these images is sufficient to bring us within 1001[5] . . . I again . . . am aware as the military judge of exactly what is permissible and not permissible within an unsworn statement from a victim. So I will consider these portions, which are proper from an unsworn perspective, and I will not consider those portions which I determine are not properly within an unsworn.

### b. Standard of Review

We review a military judge's decision to restrict an accused's unsworn statement for abuse of discretion. *United States v. Sowell*, 62 M.J. 150, 152 (C.A.A.F. 2005); *see generally United States v. Grill*, 48 M.J. 131 (C.A.A.F. 1998). Accordingly, we will review the military judge's decision to allow a victim to present an unsworn victim impact statement pursuant to R.C.M. 1001A for abuse of discretion.

### c. Analysis

Article 6b, UCMJ, gives victims the right to be reasonably heard through an unsworn statement, which is tantamount to victim allocation at sentencing. *See Kenna v. United States Dist. Court*, 435 F.3d 1011, 1014–16 (9th Cir. 2006); *United States v. Degenhardt*, 405 F. Supp. 2d 1341, 1351 (D. Utah 2005). R.C.M. 1001A broadly defines the scope of victim impact.

---

[5] We find that both references by the trial judge to 1001 were in fact referring to R.C.M. 1001A because the victim impact statements were unsworn and could not have been admitted under R.C.M. 1001(b)(4).

The trial judge correctly found that child pornography is a continuing crime and a child depicted in the images is victimized each time the images are downloaded and viewed. *See Paroline v. United States*, __ U.S. __, 134 S. Ct. 1710, 1726 (2014); *see also United States v. Anderson*, 60 M.J. 548, 557 (A.F. Ct. Crim. App. 2004). Appellant pleaded guilty to possession and distribution of child pornography that included photos and videos depicting B and J. They, along with B's mother, exercised their right to be heard through written unsworn victim impact statements in this case. Appellant's crimes involved possessing, viewing, and distributing the images of these two victims. The statements of B, B's mother, and J discuss the social, psychological, and financial impact of their images being available on the internet for anyone to find and view.

While B's statement did address the specifics of the abuse suffered at the hands of her father, it also addressed the social and psychological impact of the offenses of which Appellant was convicted. Specifically, B expressed anxiety of someone she knows from school or elsewhere finding out about the images and looking for them; her belief that the people who look at these photos do not care about the effect on the individuals in the images; and frustration about her perceived inability to be a teenager with a normal life, including her hopes and dreams for the future.

B's video statement described the impact of the investigation, trial preparation and actual trial of her father. She described how significant the support of investigators and prosecutors was in influencing her decision to continue to participate in the trial and how those interactions were critical to her seeing herself as something more than a victim. Finally, she acknowledged that she was only comfortable advocating to law enforcement and prosecutors so that other victims could be helped as she was.

B's mother's statement addressed the psychological and financial impact of the offenses of which Appellant was convicted; pondered how those who look at these types of photos would feel if it was their daughter, granddaughter or niece; further addressed her belief that sharing the images makes it worse because it creates a demand; expressed her frustration that many feel these crimes do not hurt anyone; and detailed the financial cost resulting from counseling and medications for her daughter.

J's statement addressed the underlying abuse by her father, but also described the impact of the images on the internet, including her fear of leaving her home without a trusted friend; the fact that every time someone sees her images she feels like they are the ones who hurt her to begin with; anxiety about pedophiles seeing her images; and expressing her belief that anyone who looks at these photos is hurting her and keeping her pain going for the rest of her life.

The military judge did not abuse his discretion by allowing the properly identified victims to exercise their right to be reasonably heard via unsworn statements. He was aware of what could be considered pursuant to R.C.M. 1001A and properly informed the parties he would consider only the information that properly constituted unsworn victim impact.

### d. Applicability of Mil. R. Evid. 403

Victim impact can constitute aggravation evidence that, with a proper foundation, may be introduced by the Prosecution during a presentencing hearing under R.C.M. 1001(b)(4). However, unsworn victim impact statements offered pursuant to R.C.M. 1001A are not evidence, and therefore not aggravation evidence offered by the Prosecution. A number of military decisions have addressed the use of victim impact statements, but in this extremely fact dependent developing area of law, Mil. R. Evid. 403 has not been uniformly applied.[6]

Article 6b, like the CVRA, was enacted to make crime victims independent participants in the military justice system. R.C.M. 1001A defines the parameters of that participation, and does so without using the word "evidence."

Our holding here is not to suggest that unsworn victim statements are unfettered or that the right to be reasonably heard is indefeasible as the *Kenna* court held. 435 F.3d at 1016. The military judge has the obligation to ensure the content of a victim's unsworn statement comports with the defined parameters of victim impact or mitigation as defined by the statute and R.C.M. 1001A. *See Manual for Courts-Martial (*2016 ed*.) (MCM)*, pt. II, Discussion ("A victim's unsworn statement should not exceed what is permitted under R.C.M. 1001A(c) . . . . Upon objection or *sua sponte*, a military judge may stop or interrupt a victim's unsworn statement that includes matters outside the scope of R.C.M. 1001A"). A victim's right to be heard at sentencing is the right to be "reasonably" heard. 10 U.S.C. § 806b(a)(4). What a military judge may find to be "reasonable" in a particular context may be informed to some extent by legal principles embodied in the Military Rules of Evidence. However, those rules do not apply to victim unsworn statements, which are not evidence.

---

[6] *See United States v. Daniels*, No. 201600221, 2017 CCA LEXIS 240 (N-M. Ct. Crim. App. 13 Apr. 2017) (unpub. op.); *United States v. Embleton*, No. 201600338, 2017 CCA LEXIS 193 (N-M. Ct. Crim. App. 28 Mar. 2017) (unpub. op.); *United States v. Rowe*, No. ACM 38880, 2017 CCA LEXIS 89 (A.F. Ct. Crim. App. 8 Feb. 2017) (unpub. op.); *United States v. Parr,* No. ACM 38878, 2017 CCA LEXIS 86 (A.F. Ct. Crim. App. 7 Feb. 2017) (unpub. op.).

Mil. R. Evid. 403 addresses "legal relevance" and provides that "evidence" may be excluded notwithstanding its logical relevance. In the decision to allow a victim to exercise their right to be heard on sentencing, a military judge is neither making a relevance determination nor ruling on the admissibility of otherwise relevant evidence. Instead, the military judge assesses the content of a victim's unsworn statement not for relevance, but for scope as defined by R.C.M. 1001A.

Recently, this court published *United States v. Barker*, 76 M.J. 748, 755 (A.F. Ct. Crim. App. 2017), which addressed, *inter alia*, the military judge's admission and consideration of unsworn victim impact statements where the Government failed to establish the foundational predicate—that the author of the unsworn victim impact statement was a crime victim for the statement to be considered under R.C.M. 1001A. The *Barker* analysis addressed the nexus between the statements offered and the offenses of which the Appellant was convicted, to include a discussion of "the required Mil. R. Evid. 403 balancing test." Insofar as we have held that statements made by a victim in the exercise of his or her right to be heard are not evidence, the balancing test in Mil. R. Evid. 403 is inapplicable to assessing the reasonable constraints that may be placed upon such statements.[7] To the degree *Barker* stands for such a proposition, it is overruled.[8]

### e. Application in the field.

Trial practitioners must recognize the distinction between evidence offered and admitted during presentencing by the prosecution and defense under R.C.M. 1001 and victim impact statements offered under R.C.M. 1001A. The victim "shall be *called by the court-martial*" as their right to be heard is "*independent* of whether they testify during findings or are *called to testify under R.C.M. 1001*." R.C.M. 1001A(a) (emphasis added).

We reemphasize that R.C.M. 1001(a) was modified when R.C.M. 1001A was added, and that it now establishes a general sequence of presentencing matters. Specifically, the prosecution starts by providing service data and personal data relating to the accused and the character of his or her prior

---

[7] Having determined that Mil.R. Evid. 403 does not apply to R.C.M. 1001A unsworn victim impact statements, we need not address Appellant's remaining assertions that under Mil. R. Evid. 403 the statements in this case were improperly considered by the military judge.

[8] This holding also impacts the unpublished decisions in *Parr* and *Rowe* to the extent that they address the application of Mil. R. Evid. 403 to unsworn victim impact statements.

service (taken from the charge sheet and personnel records), evidence of prior convictions, evidence of aggravation, and evidence of rehabilitative potential. R.C.M. 1001(a)(1)(A). The prosecution's sentencing case is followed by the victim's right to be reasonably heard pursuant to R.C.M. 1001A. R.C.M. 1001(a)(1)(B). Finally, the defense presents evidence in extenuation or mitigation. R.C.M. 1001(a)(1)(C). This change is noteworthy because it recognizes there are three distinct categories of matters that may be presented during presentencing. It is critical that all practitioners are familiar with the specific authority for and process by which to offer each type.

In this case, the unsworn victim impact statements were marked, offered, and admitted as prosecution exhibits. This was an error. We recommend these types of exhibits be marked as court exhibits in accordance with the *Uniform Rules of Military Practice Before Air Force Courts-Martial*, Rule 7.1(C) (1 Jan. 2017).

Finally, counsel and trial judges must ensure that the specific authority relied upon for the offer of unsworn victim impact statements is clearly reflected in the transcript. As this opinion has demonstrated, the inadvertent inclusion or omission of a lower case or upper case "A" after R.C.M. 1001 impacts appellate review.

**B. Sentence Appropriateness.**

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 4 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). "We 'may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine, on the basis of the entire record, should be approved.'" Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015).

"We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *Id.* (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Though we have great discretion to determine whether a sentence is appropriate, we have no power to "grant mercy." *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

Appellant requests this court disapprove the bad-conduct discharge and any confinement in excess of nine months. Appellant primarily relies on the fact that the offenses did not include production of child pornography or "contact offenses involving minors," and attempts to minimize the distribution offense. Furthermore, Appellant references a variety of Federal cases for the proposition that his sentence is inappropriately severe.

When considering an argument of sentence disparity, we are only required to examine sentences in closely related cases. *Anderson*, 67 M.J. at 705 (citing *United States v. Wacha*, 55 M.J. 266, 267–68 (C.A.A.F. 2001)). Appellant bears the burden of demonstrating that any cited cases are "closely related" and that the sentences are "highly disparate." *Id*. When considering disparity, this court may consider the difference between the actual sentences and potential maximum sentences for Appellant and his co-actors. *Id*. at 706 (citing *United States v. Lacy*, 50 M.J. 286, 289 (C.A.A.F. 1999)). Appellant fails to meet this burden because the cited cases are not "closely related," but rather involve a completely different sentencing structure than is used in courts-martial, and there are no "co-actors" in this case.

Appellant faced a maximum punishment that included a dishonorable discharge and confinement for up to 30 years. Appellant negotiated a pretrial agreement capping confinement at five years. The sentence of a bad-conduct discharge, total forfeiture of pay and allowances, confinement for two years, and reduction to E-1 was clearly within the discretion of the military judge to impose and the convening authority to approve.

We have given individualized consideration to this Appellant, the nature and seriousness of his offenses, his record of service, and other relevant matters contained in the record of trial. We find the approved sentence is not inappropriately severe.

## C. Post-Trial Delay

Appellant has not asserted a right to timely review and appeal. However, we note that Appellant's case was docketed with this court on 16 June 2016 and appellate review was not completed within 18 months. This amounts to a presumptively unreasonable post-trial delay established by the United States Court of Appeals for the Armed Forces (CAAF) in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Accordingly, we have considered the four factors identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate review has been violated.[9] *Id*. at 135. Where, as here, there is no discernible prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system."

---

[9] These factors include: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005), *United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004)).

*United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Considering the relevant factors together, we conclude that the necessary delay to issue an *en banc* opinion on a developing issue is not so egregious as to impugn the fairness and integrity of the military justice system.

Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.[10] On the whole, the processing of Appellant's case has not been subjected to excessive post-trial delay, and we perceive no substantial harm to Appellant, prejudice to the interests of justice or discipline, or erosion of this court's ability to conduct our review or grant appropriate relief that would move us to modify an otherwise fitting sentence.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

---

[10] These factors include: (1) how long the delay exceeded the standards set forth in *Moreno*; (2) what reasons, if any, the Government set forth for the delay, and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) keeping in mind that our goal under *Tardif* is not to analyze for prejudice, whether there is nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay; (4) whether the delay has lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline; (5) whether there is any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation; and (6) given the passage of time, whether this court can provide meaningful relief in this particular situation. *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

HARDING, Senior Judge (concurring and dissenting in part) joined by Chief Judge DREW and Judge MINK.

I fully agree with my esteemed colleagues in the majority that the military judge, in determining Appellant's sentence, did not abuse his discretion by considering the three written and one videotaped unsworn victim statements pursuant to Rule for Courts-Martial (R.C.M.) 1001A. However, I respectfully dissent from majority's holding that the Military Rules of Evidence, and in particular Mil. R. Evid. 403, do not apply to unsworn victim statements presented under R.C.M. 1001A(e), and that portion of the majority's holding reversing in part *United States v. Barker*, 76 M.J. 748, 755 (A.F. Ct. of Crim. App. 2017).

Upon review of Article 6b(a)(4)(B), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 806b(a)(4)(B), Mil. R. Evid. 1101, and R.C.M. 1001 and 1001A, I conclude that the Military Rules of Evidence apply to victim statements presented under R.C.M. 1001A. R.C.M. 1001A implemented a victim's "right to be reasonably heard at a sentencing hearing" under Article 6b(a)(4)(b), UCMJ, as an independent right to fully participate, to speak, and to present a statement, sworn or unsworn, to a court-martial to be considered in the determination of a sentence "relating to the offense." The right of victim allocution is not, however, without reasonable limitations on the content of those statements and nothing in Article 6b or R.C.M. 1001A suggests the victim's right to be heard is beyond the scope of the procedural and evidentiary rules of presentencing. In fact, R.C.M. 1001A is silent as to whether the Military Rules of Evidence apply. The majority, by holding "that unsworn victim impact statements offered pursuant to R.C.M. 1001A are not evidence,"[1] finds the rules of evidence inapplicable. The rules, however, are silent as to whether a victim statement introduced under R.C.M. 1001A, sworn or unsworn, is "evidence" and I disagree that a plain reading of the rules shows them not to be evidence. To that end, I focus not so much on the label applied or not applied to name or categorize these victim statements as I do on their

---

[1] In support of its position that a victim unsworn statement is not evidence, the majority opinion points to *United States v. Provost*, 32 M.J. 98 (C.M.A. 1991). *Provost* references WILLIAM WINTHROP, MILITARY LAW AND PRECEDENTS 300 (rev. 2d ed. 1920) (Winthrop) wherein it states "if an accused elects to make an unsworn statement, he is not offering evidence." 32 M.J. at 99. While the issue in *Provost* addressed an accused's unsworn statement in a sentencing proceeding, the context of the quoted language from the text of Winthrop addressed an accused's "concluding statement" regarding the findings that was in the nature of an argument. Within that context, the legal point made was that the *closing argument* of an accused is not evidence.

function and purpose. As R.C.M. 1001A victim statements, sworn or unsworn, are presented to the court-martial for use and consideration on the determination of sentence, in addition to empowering a victim to speak, I would treat them as sentencing "evidence" by any other name and follow the Military Rules of Evidence, absent an exception otherwise provided.

Mil. R. Evid. 1101(a) plainly states that "except as otherwise provided in this Manual, these [Military Rules of Evidence] apply generally to all courts-martial." Mil. R. Evid. 1101(d) lists proceedings excepted from application of the rules, and sentencing is not among the exceptions. As the majority points out, the Military Rules of Evidence do apply at sentencing. *United States v. Saferite*, 59 M.J. 270, 273 (C.A.A.F. 2004) (quoting *United States v. McDonald*, 55 M.J. 173, 176 (C.A.A.F. 2001)). R.C.M. 1001A implemented the victim's right to be reasonably heard as a part of the presentencing procedure, a procedure subject to the rules of evidence. Given this framework, absent an express exception in the Manual for Courts-Martial, the Military Rules of Evidence currently apply to R.C.M. 1001A victim statements, and specifically victim unsworn statements presented under R.C.M. 1001A(e).

In light of my view that the Military Rules of Evidence apply to R.C.M. 1001A, I also respectfully dissent from that portion of the majority's holding reversing *Barker* in part to the extent that it required the application of the Mil. R. Evid. 403 balancing test to victims statements introduced under R.C.M. 1001A. *Barker,* 76 M.J. at 755. In *Barker*, this court addressed an objection to the admission of an unsworn victim statement based on the fact that it was authored before the accused's criminal acts, and determined such timing "[did] not necessarily make the statement irrelevant to the accused's offenses." *Id.* at 754 (alteration in original). *Barker* further stated that in the context of a "required Mil. R. Evid. 403 balancing test, the military judge should consider" the listed factors in the rule as applied to a victim impact statement. *Id.* at 755. While I acknowledge that the Rule does not strictly *require* a military judge to do so, my larger point is that Mil. R. Evid. 403 explicitly provides that a military judge *may* exclude otherwise relevant evidence if it is substantially outweighed by one of the listed factors. Accordingly, even though *Barker* speaks in terms of a "required" application of Mil. R. Evid. 403, the requirement is really a permissive authority for the military judge to exclude otherwise qualified information offered under R.C.M. 1001A. To that extent I believe that *Barker* is correct.

Finally, although I disagree with the majority's holding that the Military Rules of Evidence are inapplicable to victim statements, I am confident that military trial judges will, as suggested as permissible by the majority, be informed to some extent by legal principles embodied in the Military Rules of Evidence. This leaves a military judge with some guidance when determining

whether a crime victim's statement offered under R.C.M. 1001A is a *reasonable* exercise of the limited right afforded by Article 6b, UCMJ. I believe the current rule and the wiser alternative is for the military judge to apply the Military Rules of Evidence, including Mil. R. Evid. 403.

HUYGEN, Judge (concurring in the result in part and dissenting in part):

I concur with the majority in its holding that unsworn victim statements considered pursuant to R.C.M. 1001A(e) are not evidence and, correspondingly, the Military Rules of Evidence, particularly Mil. R. Evid. 403, do not apply to them. However, I respectfully dissent regarding the sole videotaped statement. R.C.M. 1001A does not permit its consideration, and the military judge abused his discretion in doing so.

A victim's right to be reasonably heard at a sentencing hearing is purely a creation of statute, specifically, Article 6b(a)(4)(B), UCMJ, 10 U.S.C. § 806b(a)(4)(B). The same statute defines "victim" and limits the right to a sentencing hearing "relating to the offense." R.C.M. 1001A is the President's implementation of Article 6b(a)(4)(B); defines the substance a victim statement can include; and specifies the form a victim statement can take. R.C.M. 1001A(e) details the procedure for a victim to present an unsworn statement and permits an appointed designee or counsel to make or deliver an unsworn statement for a victim.

The record in this case is clear: the military judge and trial counsel were unclear on the procedure for unsworn victim statements under R.C.M. 1001A, particularly in the absence of the victim. I agree with the majority that the victim statements should have been marked as court exhibits and the military judge and counsel should have ensured the application of R.C.M. 1001A was clearly reflected in the record. I also reach the same conclusion as the majority that the military judge considered the four victim statements, three written and one videotaped, as unsworn victim impact statements under R.C.M. 1001A.

My divergence from the majority is specific to the videotaped statement and based on three requirements of R.C.M. 1001A. First, R.C.M. 1001A requires affirmative action by the victim to exercise the right to be reasonably heard. The videotaped statement is a keynote address given by B at a Crimes Against Children Conference in which she described and praised law enforcement and prosecutors for their efforts during the investigation and prosecution of the offender who originally victimized B. Unlike B's written statement, the videotaped statement is not titled and was not created as a victim statement. Although Detective (Det) KP could testify that B's written "victim impact statement" was what it appeared to be—a victim statement by B—he

could not offer similar testimony for the videotaped statement other than to confirm that it was what it appeared to be—a conference address by B. While Det KP testified it was his understanding that B wanted the videotaped statement "considered in sentencing proceedings," Det KP was not permitted under R.C.M. 1001A(e) to make or deliver an unsworn statement for B. As a result, Det KP's testimony concerning his "understanding" of what B wanted done with the videotaped statement was insufficient to establish it was an unsworn victim statement for consideration pursuant to R.C.M. 1001A.

Secondly, R.C.M. 1001A(e) permits a victim unsworn statement to be "oral, written, or both." The rule provides for no other form or format. The video was not, despite the intent and attempt of trial counsel, played on the record as an oral statement, and it was not transcribed and provided as a written statement. The statement in its videotape form could not be considered under R.C.M. 1001A.

Finally, R.C.M. 1001A(c) permits a victim statement to include "victim impact or matters in mitigation." When trial counsel offered the video, defense counsel made a timely and laudably accurate objection that it did not contain any "victim impact" *as defined by R.C.M. 1001A(b)(2)*. The military judge overruled the objection based on what constitutes evidence in aggravation under R.C.M. 1001(b)(4); the broad scope of "evidence of victim impact;" and Det KP's description of the video. (The record does not indicate that the military judge watched the video before overruling the objection.) R.C.M. 1001A(b)(2) defines "victim impact" as "any financial, social, psychological, or medical impact on the victim directly relating to or arising from the offense of which the accused has been found guilty." Appellant was convicted of possession and distribution of child pornography, including images of B. Unlike B's written statement, the videotaped statement does not contain "victim impact" as defined by R.C.M. 1001A(b)(2) and could not be considered under R.C.M. 1001A.

FOR THE COURT

JULIE L. ADAMS
Acting Clerk of the Court