# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

**No. ACM 24029**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jason R. COPP**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 27 June 2025

————————————

*Military Judge*: Joshua D. Rosen (pretrial); Tyler B. Musselman (arraignment and trial).

*Sentence*: Sentence adjudged 27 April 2023 by SpCM convened at Hurlburt Field, Florida. Sentence entered by military judge on 8 June 2023: Hard labor without confinement for 30 days, forfeiture of $1,000.00 pay per month for six months, and a reprimand.

*For Appellant:* Major Jennifer M. Harrington, USAF; Captain Michael J. Bruzik, USAF.

*For Appellee:* Lieutenant Colonel J. Pete Ferrell, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Tyler L. Washburn, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, MASON, and KEARLEY, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Chief Judge JOHNSON and Judge KEARLEY joined.

---

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), *Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*).

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

MASON, Judge:

A special court-martial composed of officer members convicted Appellant, contrary to pleas, of three specifications of larceny, in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921.[2] Appellant was sentenced to hard labor without confinement for 30 days, forfeiture of $1,000.00 pay per month for six months, and a reprimand. Appellant requested deferment of adjudged forfeitures. The convening authority denied Appellant's requested deferment, took no action on the findings, and approved the sentence in its entirety.

Appellant raises seven issues on appeal which we have reworded: (1) whether the convictions are legally and factually sufficient; (2) whether Appellant's right to a speedy trial pursuant to Rule for Courts-Martial 707 was violated; (3) whether the findings were ambiguous and should have been resolved by the military judge as not guilty; (4) whether the military judge abused his discretion in permitting the Government to present the testimony of Colonel KH in rebuttal; (5) whether the entry of judgment wrongfully subjected Appellant to criminal indexing; (6) whether the fact that the Government took 312 days after sentencing to complete the record of trial violated Appellant's right to speedy appellate review; and (7) whether Appellant was entitled to a unanimous verdict.

We have carefully considered Appellant's allegations of error in issues (2), (5), and (7) and find they do not require discussion or relief. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)).

Regarding issue (3), when the members returned from their deliberations, they did so with mixed findings. On the findings worksheet, the members had erroneously lined through the section "Of the Charge, Guilty" despite having marked that they found Appellant guilty of 3 of the originally charged 12 specifications. Thus, given that they were finding Appellant guilty of some of the

---

[2] All references to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). All other references to the UCMJ and Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.). All references to the Rules for Courts-Martial are to the 2024 *MCM*.

specifications of the charge, they were required to also find Appellant guilty of the Charge. The military judge's instructions to the court members, prior to announcement of the findings, to complete a new findings worksheet that was consistent with their original findings but did not line through the language "Of the Charge, Guilty," was appropriate and correct. Appellant argues that the findings by exceptions and substitutions changing the alleged value to of "some value" indicates the members' intent to find Appellant not guilty. We are unpersuaded by this argument. Rather, we are convinced beyond a reasonable doubt that their lining out the finding "Of the Charge, Guilty" was nothing more than a clerical mistake. "[C]lerical mistakes are not necessarily prejudicial." *United States v. Adams*, 66 M.J. 255, 259 (C.A.A.F. 2008). Therefore, Appellant is not entitled to relief for this allegation of error.

As to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights and affirm the findings and sentence.

## I. BACKGROUND

During the charged timeframes in the specifications of which Appellant was convicted, he was a member of a special operations unit. The unit regularly utilized numerous cell phones to complete mission objectives. These cell phones were procured by the federal government through partnerships with other United States government agencies. The process for procuring these cell phones was substantially scrutinized prior to use. Conversely, the disposal of the cell phones after they were utilized for mission purposes was not substantially scrutinized.

Amongst Appellant's duties, he was responsible for ensuring the unit received what they needed for the missions and that the procured unit cell phones were in working order. He was also responsible for accounting for these cell phones within the unit. Once the missions were completed, Appellant was still responsible for the cell phones. Oftentimes after these missions, the used cell phones were placed in boxes about the area from which the unit operated. There was no written policy for the process of how to dispose of the used cell phones.

When the unit was decommissioned in the 2018–2019 timeframe, Appellant was the last member of the unit in the mission location and he was still responsible for the cell phones. Investigation into an unrelated matter revealed that Appellant had sold three of the cell phones to an online, private retailer, and personally received a total of $1,220.00 from that retailer.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted). The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1973)).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,' [this] court is 'convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399). The term "reasonable doubt" does not mean evidence free from conflict. *See Lips*, 22 M.J. at 684. This court's review of the factual sufficiency of evidence for findings is limited to the evidence admitted at trial. *See* Article 66(d), UCMJ, 10 U.S.C. § 866(d); *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007) (citations omitted).

Appellant was convicted by exceptions and substitutions of three specifications of larceny, one specification per phone, in violation of Article 121, UCMJ,

which required the Government to prove the following four elements for each specification beyond a reasonable doubt: (1) that Appellant wrongfully withheld certain property, that is a cellular phone, from the possession of the United States; (2) that the property belonged to the United States; (3) that the property was of some value; and (4) that the withholding was with the intent to permanently appropriate the property to Appellant's own use or the use of someone other than the owner. *See Manual for Courts-Martial, United States* (2016 ed.), pt. IV, ¶ 46.b.(1).

**2. Analysis**

Appellant challenges the legal and factual sufficiency of the evidence supporting his convictions for larceny of the three phones. He argues, as he did at trial, that the phones were abandoned property and thus, he became the rightful owner of the phones before he sold them online. The evidence does not support his assertions.

Appellant was responsible for accounting for the cell phones within the unit once they were procured and provided to the unit. It was never in dispute that the phones upon procurement or provision were government property. Appellant's responsibility for the property continued through the decommissioning of the unit. Multiple witnesses testified about the lack of policy or guidance regarding disposition of the phones post-mission usage. However, where Appellant's argument failed at trial and again fails here on appeal is that a lack of clear policy or guidance on how to properly dispose, recycle, or reuse the phones does not *de facto* cause the phones to be legally abandoned. Moreover, the lack of clear guidance did not empower Appellant, who had the duty to account for the phones, to unilaterally declare the phones abandoned, take sole ownership of them, and proceed to sell them to a private buyer for his own personal enrichment.[3]

Multiple witnesses testified generally about how government property is handled in the military. One witness testified, "[i]t's common knowledge to know that when you receive [g]overnment property that when you're done with it you don't sell it, and that is computers, phones. Anything that I've been given, there's a process to turn those items in, and I've never known otherwise." Another testified, "Whoever paid for that phone would determine its usefulness

---

[3] We acknowledge Colonel (Col) KH's testimony saying, "if [Appellant] had deemed them abandoned, then they were abandoned." However, in light of all of the evidence presented, we reject the argument, as apparently did the members at trial, that despite the onerous procurement process, Appellant, an E-7, had blanket authority to deem government property for which he was accountable abandoned and then sell that property for his own personal benefit. Col KH's rebuttal testimony supports this conclusion as well.

once it did whatever it was supposed to do and intended to do." Another stated that based upon his experience in the Air Force, when something is issued to a member, they turn it back in and that is how the Air Force operates, even in the joint special operations area.

Importantly, as discussed below regarding the rebuttal evidence, Appellant's division chief, Colonel (Col) KH, testified that Appellant's program did fall under Col KH. He further testified that he did not authorize Appellant to take the cell phones, sell them, and keep the proceeds for his own personal gain.

Viewing the evidence in the light most favorable to the Government, the members rationally found the essential elements of each larceny offense beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98. Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt. *See Reed*, 54 M.J. at 41. Therefore, we conclude Appellant's convictions are both factually and legally sufficient.

## B. Rebuttal Witness

### 1. Law

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Carter*, 74 M.J. 204, 207 (C.A.A.F. 2015). A military judge is given wide discretion and more deference if they properly conduct the Mil. R. Evid. 403 balancing test and articulate their reasoning on the record. *Id.*

"Each party shall have full opportunity to present evidence." Rule for Courts-Martial (R.C.M.) 913(c). Ordinarily, the prosecution will have the opportunity to present rebuttal evidence following the presentation of evidence for the defense. R.C.M. 913(c)(1)(C). "Additional rebuttal evidence in the discretion of the military judge . . ." may ordinarily be offered following presentation of defense evidence in surrebuttal. R.C.M. 913(c)(1)(E)

The legal function of rebuttal evidence is "to explain, repel, counteract or disprove the evidence introduced by the opposing party." *United States v. Saferite*, 59 M.J. 270, 274 (C.A.A.F. 2004) (quoting *United States v. Banks*, 36 M.J. 150, 166 (C.M.A. 1992)). "'The scope of rebuttal is defined by evidence introduced by the other party.'" *Id.* "The context in which evidence is offered is often determinative of its admissibility." *Id.*

### 2. Analysis

The central issue at trial was whether Appellant had authority to take the cell phones for his own use and do with them as he pleased, including selling

them for his own personal profit. In other words, were the cell phones abandoned by the Government?

The trial defense counsel in the defense case-in-chief called Lieutenant Colonel (Lt Col) KC to testify. During that testimony, Lt Col KC stated that he and Appellant worked in the same unit together. He testified about how things worked in the unit and some more details about the use of the cell phones. He testified generally about return of issued items and stated that he was not aware of any specific policy on what to do with the phones after the missions. Trial defense counsel asked him, "So with every policy it's really commanders directing their subordinates on whether something is-has value or not?" Lt Col KC responded, "Absolutely."

After the Defense rested, the trial counsel indicated that they would present rebuttal testimony. Trial defense counsel objected to the testimony. After a fairly lengthy discussion, the military judge overruled the objection and permitted trial counsel to recall Col KH to testify. After trial counsel reestablished that Col KH oversaw the program Appellant worked, trial counsel asked Col KH to reiterate that he did not authorize Appellant to take the cell phones, and that he did not authorize Appellant to sell them, nor keep the proceeds for his own personal gain.

We find Col KH's very brief testimony squarely within the parameters of proper rebuttal. Once the trial defense counsel presented testimony regarding policy and proper disposal of the cell phones, trial counsel was properly permitted to explain, repel, counteract, or disprove the evidence introduced by the trial defense counsel. *Saferite*, 59 M.J. at 274. The military judge did not abuse his discretion in admitting this testimony and Appellant is not entitled to any relief.[4]

**C. Post-Trial Delay**

### 1. Additional Background

Appellant was sentenced on 27 April 2023. The court reporter certified the record of trial as accurate and complete in accordance with Rules for Courts-Martial 1112(b) and 1112(c)(1) on 21 June 2023. On 14 August 2023, Appellant received and signed a receipt for the record of trial. On 13 October 2023, the Government attempted to deliver to Appellant a memorandum notifying

---

[4] We note that the military judge did not articulate if or how he conducted the Mil. R. Evid. 403 balancing test, therefore we give this ruling significantly less deference. Even if we conducted a de novo review of this ruling, we would agree with the military judge that this evidence is clearly admissible as rebuttal evidence. Moreover, the probative value of the evidence was not substantially outweighed by a danger of unfair prejudice or any other Mil. R. Evid. 403 concern.

Appellant of his right to appeal to this court. The post office was unable to deliver the notice. On 29 November 2023, the Government emailed a copy of the notice of his right to appeal to Appellant. On 30 November 2023, Appellant acknowledged receipt of the notice via email.

On 8 January 2024, the court received Appellant's notice of direct appeal and docketed the case. On 31 May 2024, the record of trial was provided to the court. Subsequent to the record of trial being delivered to the court, Appellant moved for and received, over government objection, seven enlargements of time to file his assignments of error brief. On 18 March 2025, Appellant moved for an eighth enlargement of time. The court denied this motion. The Government filed their answer brief on 1 May 2025 having received a five-day enlargement of time to do so.

**2. Law**

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (first citing *United States v. Toohey*, 60 M.J. 100, 101 (C.A.A.F. 2004); then citing *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 37–38 (C.A.A.F. 2003)). Whether an appellant has been deprived of his due process right to speedy post-trial and appellate review, and whether constitutional error is harmless beyond a reasonable doubt, are questions of law we review de novo. *United States v. Prasad*, 80 M.J. 23, 29 (C.A.A.F. 2020) (citation omitted); *United States v. Arriaga*, 70 M.J. 51, 56 (C.A.A.F. 2011) (citing *Moreno*, 63 M.J. at 135).

The initial question is whether there has been a "facially unreasonable delay." *Moreno*, 63 M.J. at 136. *Moreno* held a presumption of unreasonable delay arises when the convening authority did not take action within 120 days of the end of the completion of the court-martial, when the record is not docketed with the Court of Criminal Appeals (CCA) within 30 days of the convening authority's action, or when a CCA does not render a decision within 18 months of the case's docketing. *Id.* at 142. In *United States v. Livak*, this court adapted the 120-day and 30-day *Moreno* standards by establishing an aggregated 150-day sentencing-to-docketing threshold for facially unreasonable delay in cases that were referred to trial on or after 1 January 2019. 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020). However, in light of subsequent statutory changes, this court recently found the 150-day threshold established in *Livak* does not apply to appeals, such as Appellant's, submitted under Article 66(b)(1)(A), UCMJ, 10 U.S.C. § 866(b)(1)(A), and filed after Congress amended Articles 66 and 69, UCMJ, 10 U.S.C. §§ 866, 869, effective 23 December 2022. *See* The National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, 544(b)(1)(A), (B), 135 Stat. 2395, 2582–84 (23 Dec. 2022); *United States v. Boren*, No. ACM 40296 (f rev), 2025 CCA LEXIS 103, at *47 (A.F. Ct. Crim.

App. 19 Mar. 2025) (unpub. op.). We still review whether an unreasonable delay warrants relief.

A facially unreasonable delay triggers an analysis of the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (additional citations omitted). *Moreno* adopted three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of a convicted person's grounds for appeal and ability to present a defense at a rehearing. *Id.* at 138–39 (citations omitted). "[T]he appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* at 140.

"We analyze each factor and make a determination as to whether that factor favors the Government or the appellant." *Id.* at 136 (citation omitted). Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id.* (citing *Barker*, 407 U.S. at 533 ("Courts must still engage in a difficult and sensitive balancing process.")). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* (citation omitted). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

A CCA may provide appropriate relief for excessive post-trial delay. Article 66(d)(2), UCMJ. Appropriate relief is not synonymous with meaningful relief. *United States v. Valentin-Andino*, __ M.J. __, No. 24-0208, 2025 CAAF LEXIS 248, at *7 (C.A.A.F. 31 Mar. 2025). "Although it is within a Court of Criminal Appeal's discretion to place its reasoning about Article 66(d)(2)[, UCMJ,] relief on the record, it is not required to do so." *Id.* at 11 (citing *Winckelmann*, 73 M.J. at 16).

### 3. Analysis

Appellant alleges that he was denied speedy appellate review due to the Government taking 312 days of combined time between sentencing and the delivery of the memorandum notifying Appellant of his right to appeal to this court and Appellant's filing of the notification of direct appeal and the delivery of the record of trial to the court on 31 May 2024. He argues that this delay has "interfered with [Appellant]'s ability to exercise his appellate rights, and has resulted in prejudice." We find that the record before us does not substantiate either claim.

We first note this decision is rendered within 18 months of the case being docketed. Therefore, the "appellate" delay is not presumptively unreasonable under *Moreno*. *See Moreno*, 63 M.J. at 142.

Next, assuming without deciding that the delay between Appellant's sentencing and the docketing of the complete record with this court was facially unreasonable, we do not find a violation of Appellant's due process rights in light of the *Barker* factors and *Toohey*. We do not find Appellant suffered oppressive incarceration nor impairment of his grounds for appeal or defense in case of retrial, nor has he met his burden to show particularized anxiety or concern distinct from other appellants. *See Moreno*, 63 M.J. 138–40. Furthermore, we do not find the delay so egregious as to negatively affect the public's perception of the military justice system. *See Toohey*, 63 M.J. at 362.

We also conclude that relief under Article 66(d)(2), UCMJ, in the absence of a due process violation is not warranted. Considering all the facts and circumstances of Appellant's case, we decline to exercise our Article 66(d), UCMJ, 10 U.S.C. § 866(d), authority to grant relief for any delay in completing appellate review.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court